## Davidson v. Davidson.

June 22, 1945.

A. D. Hall for appellant.

John D. White for appellee.

OPINION OF THE COURT BY PERRY, COMMISSIONER—Reversing.

The plaintiff, Laymon Davidson, appeals from a judgment of the Clay circuit court dismissing his petition for an absolute divorce. This petition was filed on August 5, 1943, and is as follows:

"The plaintiff, Laymon Davidson, states that he and defendant, Marjorie Davidson, are husband and wife and been such continuously since their intermarriage to each other on the 19th day of November, 1942; that the plaintiff is a citizen and resident of this county and has been such continuously all his life; that the defendant is a nonresident of this state and is absent from this state and is a citizen and resident of 315 Fifth Street, S. E., in the city of Minneapolis, in the state of Minnesota, and has been a resident at said address for more than four months and in fact for more than six months last past next before the institution of this action; that said bonds of matrimony existing between them were solemnized in the said city and state, and were procured by fraud, and he further avers that the defendant represented and held out herself to this plaintiff as being virtuous and chaste and had never known any man carnally and which induced plaintiff to marry her when in fact and truth she was pregnant, great with child at the time he married her and actually gave birth to a full developed child six months and no days after said marriage of the plaintiff and the defendant; that he had no knowledge of her being unchaste until the child was born; that he has not lived with her or cohabited with her since his knowledge of the fact that she was pregnant, great with child at the time she held herself out to plaintiff that she was a virtuous woman, never knew any man in a carnal way, or had any sexual relations with any man, and he avers that on said false and fraudulent representations she obtained said marriage sought to be cancelled and annulled herein; because of said fraud and fraudulent statements and representations, and because the defendant had been guilty of adultery prior to the making of said false and fraudulent representations; and he

further avers that said false and fraudulent representations, and said crime of adultery, and the same being kept hid from plaintiff constituted cruel and inhuman treatment by the defendant of this plaintiff.

"The plaintiff says that he is not guilty of a fault, a like fault or any fault complained of herein; that it was no fault on his part that caused the defendant to commit adultery complained of or any adultery; that same was committed without his knowledge, procurement or connivance and within less than three years (months) before their said marriage, and plaintiff has not voluntarily, or at all, lived with her or cohabited with her since his knowledge of same, neither has he forgiven any of said adulterous acts, fraud, or fraudulent acts and deceit or in any way condoned same or any of same; that the adultery, the fraud, and cruel and inhuman treatment set out above, and each of them is a cause of divorce under the statute laws of the state of Minnesota, and each of them is a cause of divorce under the statute laws of this state.

"Wherefore, the plaintiff, Laymon Davidson, prays that the existing bonds of matrimony between the plaintiff and the defendant, Marjorie Davidson, and each of them be cancelled, annulled, set aside and forever for naught; and he prays for all proper and necessary orders appointing a corresponding attorney to represent hereby made; and he prays for all proper relief to which he may appear to be entitled."

Upon the filing of the plaintiff's verified petition, a corresponding attorney was appointed to warn the defendant of the nature and pendency of the action, which appointment he accepted and as such states, as set out in his warning order report, that he wrote the defendant (here appellee), Marjorie Davidson, at the address given in the affidavit, which was properly made and averred in the verified petition, informing her of the nature and pendency of the said action, and although there was on said envelope containing said letter, his return address, the same was not returned to him nor had he otherwise heard from her. Further, he stated that he had made a careful examination of the pleadings and that he was unable to make any affirmative defense thereto.

Briefly, the facts, as alleged in the petition and also as additionally given in evidence by the plaintiff in his

deposition, taken by agreement of the parties and their respective counsel, are as follows:

That the · plaintiff, Laymon Davidson, is now 26 years of age, was born on Bar Creek, in Clay county, Kentucky; has constantly there lived and made his home until in March, 1941, when he was called and inducted into the United States Army under the Selective Training and Service Act of 1940, 50 U. S. C. A. Appendix, sec. 301 et seq., and has since been shifted from post to post for more than 12 months, when he was then assigned to Fort Snelling, located on an army reservation in Hennepin county, near the suburbs of Minneapolis, Minnesota. While stationed at this post, which it appears defendant frequently visited, he met and courted the defendant, Marjorie Brown, who as stated above, lived near the post, residing at 315 Fifth Street, S. E., Minneapolis, Minnesota, for a period of some five weeks, when, on November 19, 1941, they were intermarried at the said Fort Snelling. To establish these facts, alleged in his petition, plaintiff when giving his deposition, offered in evidence his marriage certificate issued him by the authorities of Hennepin county, Minneapolis, Minnesota, showing that he and the appellee were married on November 19, 1941, at Minneapolis, Minnesota. Following their marriage they lived together as man and wife sometime prior to May 19, 1942, when he states that he separated from and left the defendant, because on that day, which was exactly six months after the date of their recent marriage, the defendant gave birth to a fully developed child, weighing 10 pounds and 4 ounces, indicating the child's birth occurred after a nine months period of gestation and pregnancy. Such being the facts developed, he was advised by medical authorities that this fully developed baby could not be conceived, developed and born with a gestation period of only six months, as was here shown by the photostatic copy issued plaintiff by the station hospital of the birth certificate record of the defendant's baby. Further, the plaintiff testified that he had never had sexual relations with the defendant during their five weeks courtship before their marriage, and, as a matter of fact, that he had never seen the defendant nine months before the child was born; that he had no knowledge whatever that the defendant was pregnant at the time of their marriage, as she had fraudulently concealed her prenuptial pregnancy

from him, or any time prior thereto, or he "never would have married her;" but, on the contrary, that she led him to believe "by her every act and conduct that she was a virtuous woman and seemed to have the highest regard and respect for morals;" that he had never cohabited with the defendant after or since his first knowledge of her being pregnant by a man other than himself, nor had he ever forgiven or condoned any of her wrongful acts connected with her pregnancy, and thought that he was getting a virtuous woman. When asked how long he had lived in Clay county, he answered, "All my life, never lived elsewhere." Further, in answer to the question of whether it was any fault on his part that caused her to be guilty of the adulterous acts or of concealing them, he answered, "It was not;" that he did not know her and had never seen her when said child was begotten, or her prenuptial pregnancy began; since he had known her only about five or six weeks before they were married; that she had always represented herself during their five weeks courtship as a virtuous woman of fine character and as never having had carnal knowledge or sexual intercourse with any man; that notwithstanding such were her false representations cruelly and fraudulently made as to her being a woman of pure and virtuous character, the loathsome opposite was revealed, when exactly six months after their marriage, to-wit, on May 19, 1942, she gave birth to a fully developed child weighing 10 pounds and 4 ounces, showing a gestation period and pregnancy of nine months; and, therefore, that the defendant's baby could not be his child, nor have been conceived by him and been fully developed during the six month period of their cohabitation, through which their married life extended; since, according to natural laws, of which the court takes cognizance, the baby, so fully developed when born, must have been conceived and had a nine months gestation, before its birth, and, therefore, it was the product of a prenuptial pregnancy; and further, that in view, as he testified, of his having never cohabited with or had sexual intercourse with the appellee, prior to their marriage, on November 19, 1941 that this fully developed child could not have been conceived by him and have fully developed within the six months period of their married life. See Cronin v. Cronin, 234 Ky. 207, 27, S. W. 2d 950. Upon being thus advised and feeling that

he had been made the innocent victim of the wiles and fraudulent representations of his wife, he felt he was not obligated to live with her longer, and at once left her and went to his home in Clay county, Kentucky, where he had always lived, and intended to indefinitely make his home, and there instituted this action for divorce, as required by the code and statutory provisions cited, against his nonresident wife, on the statutory ground of her fraudulent concealment from her husband of the fact of her prenuptial pregnancy by another man at the time of marriage, as is prescribed by KRS 403.020, subsection (4) (a), KS sec 2117, providing that (4) "a divorce may be granted to the husband * * * (a) where the wife is pregnant by another man without the husband's knowledge at the time of marriage."

Upon submission of the cause for judgment on the pleadings and proof, the court was of the opinion "that the petition states a cause of divorce and that the proof fully justifies same;" that the record shows the plaintiff's legal residence is Clay county, Kentucky, and has been such all his life, but that the marriage occurred in Minnesota; also, the cause of action and the separation, and it is not shown in this record or attempted to be shown, that the defendant was ever at any time a citizen and resident of this state and it is not shown or attempted to be shown that the defendant was ever asked or expected to become a citizen or resident of this state by the plaintiff and the court was of the opinion and so holds, that the court did not have jurisdiction of the defendant; and, therefore, adjudged that plaintiff's petition be dismissed. We are of the opinion that this ruling of the court was erroneous.

The code provides, "for a proceeding by constructive service of process against defendants who are nonresidents of the state, * * *. Upon the facts required being made to appear to the court by affidavit, a warning order is made, warning the defendant to defend, * * *. An attorney is appointed for him, and on the thirtieth day thereafter he is deemed to have been constructively summoned, and the action proceeds accordingly by the taking of depositions and other like steps." Newman's Pleading and Practice, sec. 453, p. 586. Also, it is stated in section 76, Civil Code of Practice, that "An

action for alimony or divorce must be brought in the county where the wife usually resides, if she have an actual residence in this State; if not, in the county of the husband's residence." And, Civil Code 423 further provides: "The plaintiff, to obtain a divorce, must allege and prove, in addition to a legal cause of divorce . . . A residence in this State for one year next before the commencement of the action . . . That the cause of divorce occurred or existed in this State, or, if out of the State, either that it was a legal cause of divorce in the State where it occurred or existed, or that the plaintiff's residence was then in this State."

In view of the showing made by the record of the steps taken for acquiring constructive service upon the nonresident defendant being in full and exact conformity with the express provisions of the code, providing for, and directing the mode and manner in which constructive service of process may be obtained against a nonresident defendant, we are of the opinion that the court erred in holding that the provisions here followed for acquiring constructive service of process, failed and was insufficient to bring the nonresident defendant before the court and that no jurisdiction was thereby and thereunder acquired of the nonresident defendant, and, therefore, dismissed plaintiff's petition on such existing ground, was erroneous. Therefore, we are of the opinion that the court's ruling was in such respect erroneous.

Wherefore, the judgment is reversed for further proceedings consistent with this opinion.